IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PATRICIA D. STUART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 05-0307-CV-W-GAF-SSA |
| | ) |
| JO ANNE B. BARNHART, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff filed an application for disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, *et seq*., and an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Both applications were denied. On November 22, 2004, following a hearing, an administrative law judge (ALJ) rendered a decision, in which he found that plaintiff was not under a "disability" as defined in the Act. On March 17, 2005, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Craig v. Apfel*, 212 F.3d 433, 435 (8th Cir. 2000). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the Commissioner's decision must be affirmed. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)(citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). A claimant has the burden of proving disability by establishing a physical or mental impairment that will persist for at least twelve consecutive months and prevents the claimant from engaging in substantial gainful activity. *See Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994); *Wiseman v. Sullivan*, 905 F.2d 1153, 1155 (8th Cir. 1990). If a claimant establishes that she is not able to return to her past relevant work, the burden of proof shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). The Commissioner may meet this burden by relying on the medical-vocational guidelines or vocational expert testimony.[1]

In the case at hand, the ALJ determined that plaintiff had moderate obesity; borderline intellectual functioning versus limited academic achievement; a history of insomnia; hypertension; a history of a one-time diagnosis of plantar fasciitis without recurrent findings or diagnosis; and a history of carpal tunnel release surgeries, without objective evidence of continued symptomatology, but with subjective complaints of hand pain, numbness, and weakness, which were severe impairments, but she did not have an impairment or combination of impairments that either met or equaled those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. The ALJ determined that plaintiff

---

[1] Upon review of the record and applicable authority herein, the defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

2

had the residual functional capacity (RFC) to lift, carry, push or pull 50 pounds occasionally and 25 pounds frequently; stand for prolonged period and for at least 6 hours total of a normal 8-hour workday; she had no significant postural or visual limitation, and no significant communicative limitation regarding hearing or speaking; she could not tolerate prolonged exposure to extremes of cold or environmental irritants; and due to her complaints of hand symptoms, she could not perform job tasks that required good fine finger dexterity; due to poor academic achievements, she was limited to job tasks that did not require reading skills at more than a fifth grade level, spelling at more than a fourth grade level, or mathematical computations at more than a third grade level. Based upon a hypothetical question that included all of the limitations that plaintiff experienced found credible by the ALJ, a vocational expert testified that plaintiff would be able to perform her past relevant work as a cook. The ALJ, therefore, found that plaintiff was not disabled.

Plaintiff argues on appeal that she meets the listings at § 12.05C. This listing for mental retardation requires, in relevant part, as follows:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.

Plaintiff argues that her IQ score, combined with her severe impairments, satisfies the criteria of this listing. However, the record as a whole supports the ALJ's decision. The ALJ noted that plaintiff had not shown deficits in adaptive functioning initially manifested before age 22. When plaintiff's IQ was tested prior to the age of 22, her IQ score was measured at 74. Moreover, she was never deemed mentally retarded.

Plaintiff argues that her IQ of 74 should be construed to meet the listing. In *Cockerham v. Sullivan*, 895 F.2d 492, 495-96 (8th Cir. 1990), the plaintiff's lowest IQ score was 71, lower than plaintiffs. In *Cockerham*, the plaintiff argued that he should be given the benefit of the doubt and awarded benefits because his score was so close to the upper range score of 69 required by § 12.05C of the regulations. *Id*. The Eighth Circuit held, however, that even though the plaintiff narrowly missed meeting the listing, and his lowest IQ score was close to the upper range score of 69, this does not mean that the plaintiff is "presumptively disabled." *Id*. at 496. The question of whether a claimant meets a listed impairment "is strictly a medical determination." *Id. See also* 20 C.F.R. § 416.926(b).

Furthermore, a valid IQ score is but one element of Listing 12.05C; consistent with clinical practice, the Listing also requires that a claimant have a clinical diagnosis of mental retardation. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A), 12.05. What is paramount, therefore, is the fundamental issue of whether plaintiff can properly be considered to have mental retardation.

The record does not show that plaintiff has deficits in adaptive functioning as required by the listing. Section 12.05C and the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) provide that the diagnosis of mental retardation requires both subaverage general intellectual functioning and deficits in adaptive functioning. DSM-IV 39 (4th ed. 1994). The DSM-IV explains that adaptive

4

functioning refers to how effectively individuals cope with "common life demands" and how well they meet the standards of personal independence expected of one in their particular age group, sociocultural background, and community setting. *Id*. at 40. There are 10 adaptive skills areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Id*. at 39. A diagnosis of mental retardation requires "significant limitations" in at least two of these areas. *Id*. As the ALJ explained, the record as a whole established that plaintiff had a substantial level of adaptive functioning, despite limited intellect and academic achievement. Moreover, her work history reflected her demonstrated capacity for semi-skilled work activity in the competitive economy with reported earnings far surpassing prescribed levels of substantial gainful activity for several years.

Plaintiff notes that Dr. Boraks tested her intelligence in June 2003 when she was 50 years old, and she received a verbal IQ score of 68, a performance IQ score of 67, and a full scale IQ score of 65. As the ALJ stated, Dr. Boraks reported that plaintiff demonstrated a fifth grade level of reading, fourth grade level of spelling, and third grade level of mathematical skills. The ALJ also noted that Dr. Boraks opined that plaintiff's scores were consistent with mild mental retardation. The ALJ, however, did not rely upon Dr. Boraks' diagnosis. While the ALJ, in determining plaintiff's RFC, incorporated the results of Dr. Boraks' testing, limiting plaintiff to job tasks that involved fifth grade reading skills, fourth grade spelling skills, and third grade math skills, he did not adopt Dr. Boraks' ultimate opinion of mild mental retardation. The ALJ noted that the IQ scores reported by Dr. Boraks were considerably lower than those plaintiff achieved during her school years, and were inconsistent with her actual level of functioning. The ALJ took note of plaintiff's ability to work for several consecutive years. In addition,

5

the ALJ noted that the record contained multiple references to plaintiff's admitted heroin and alcohol abuse subsequent to age 22, which might have given rise to some decrease in her intellect. The record supports the ALJ's decision that prior to age 22, plaintiff was not mentally retarded. Plaintiff had neither the IQ score, not the deficits in adaptive functioning to meet the criteria of the listing.

Nonetheless, plaintiff argues that the ALJ "should have continued his analysis to see if [her] impairments were the functional equivalent of any listing, specifically listing 12.05C." The ALJ did continue through all steps of the sequential evaluation process. However, a claimant can only equal a listed impairment when "the medical findings are at least equal in severity and duration to the listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a) (2005). If a claimant's intellectual functioning were "at least equal in severity" to mental retardation, she would have mental retardation. The fact that a claimant had an IQ of 74 prior to the age of 22, and no deficits in adaptive functioning means that she does not have mental retardation, nor does her condition equal mental retardation.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: March 28, 2006